# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

ZHOU HONG QIU,

               Petitioner,

        v.                           Case No. 26-CV-520

MARKWAYNE MULLIN, *et al.*,

               Respondents.

---

## DECISION AND ORDER

---

Zhou Hong Qiu is a citizen of China who is currently detained in this district at the Dodge Detention Facility in Juneau, Wisconsin. (ECF No. 1, ¶ 5.) Qiu argues that his detention is unlawful and petitions the court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (*See generally id.*) District Judge J.P. Stadtmueller screened the petition and set a briefing schedule. (ECF No. 3.) The case was reassigned after all parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (ECF Nos. 11–13.)

Now pending before the court is the respondents' motion to dismiss the petition on the basis that Qiu's detention is lawful under the Constitution and laws of the United

States. (ECF No. 7.) The petitioner filed a brief in opposition (ECF No. 10), and the respondents filed a reply brief in support of their motion (ECF No. 15).

## 1. Background

Qiu came to the United States "many years ago." (ECF No. 1, ¶ 9.) An immigration judge in New York City issued a removal order against him on May 9, 2002. (*Id.*, ¶ 10.) He appealed, and the Board of Immigration Appeals ("BIA") dismissed his appeal on September 26, 2003. (*Id.*, ¶ 11.)

On December 22, 2025, Immigration and Customs Enforcement ("ICE") arrested Qiu without an arrest warrant or any prior notice. (ECF No. 1, ¶ 17.) Qiu states that he has no criminal history in the United States, is married to a U.S. citizen with whom he shares three U.S. citizen children, owns a business in Wisconsin, and is not a risk to the community. (*Id.*, ¶¶ 12–16, 26–31.)

## 2. Analysis

A habeas petition under 28 U.S.C. § 2241 can serve as a forum for statutory and constitutional challenges to detention orders in immigration proceedings. *See Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001); *see also Walker v. O'Brien*, 216 F.3d 626, 629 (7th Cir. 2000) (noting that § 2241 petitions are used to challenge the fact or duration of confinement).

Detention, release and removal of individuals ordered removed from this country is governed by § 241 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C.

2

§ 1231. Under § 1231(a), the Attorney General shall remove an individual from the United States within ninety days after an order of removal—a window of time referred to in this INA section as the "removal period." 8 U.S.C. § 1231(a)(1)(A). The parties agree that Qiu's removal period began when his removal order became administratively final on September 26, 2003. (ECF No. 8 at 3; ECF No. 10 at 3.)

The INA provides that the removal period shall be extended beyond ninety days if the individual "fails or refuses to make timely application in good faith for travel or other documents necessary … or conspires or acts to prevent" his removal. 8 U.S.C. § 1231(a)(1)(C). The respondents have not accused Qiu of failing to cooperate in their removal efforts and do not dispute that his removal period has expired. (*See* ECF Nos. 8, 15.)

The INA further states, "If the [individual] does not leave or is not removed within the removal period, the [individual], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3). Because Qiu's removal period has expired, he argues that he should be subject to supervision under § 1231(a)(3) rather than detention. (ECF No. 10 at 2–3.)

The respondents contend that Qiu's detention is lawful under 8 U.S.C. § 1231(a)(6), which provides that an individual "may be detained beyond the removal period" if he is ordered removed based on a finding of inadmissibility under section 1182. (ECF No. 8 at 3.) Qiu does not challenge the respondents' assertion that he was ordered removed for

inadmissibility under 8 U.S.C. § 1182(a)(6)(A)(i), which states that a noncitizen "present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." Qiu has also not identified any pending bar to his removal.

The court is not persuaded by Qiu's logic that § 1231(a)(3) requires supervision rather than detention for *every* individual whose removal period has expired. If that interpretation was correct, then § 1231(a)(6) would be meaningless and the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 678 (2001), would have been unnecessary.

In *Zadvydas*, the Supreme Court addressed a challenge to the constitutionality of detention extending beyond the removal period due to the government's inability to accomplish removal. *See* 533 U.S. at 689. The Court determined that post-removal-period detention must be limited to a period reasonably necessary to bring about the individual's removal from the United States and that six months would be a presumptively reasonable period of time to accomplish removal. *Id.* at 689, 701. If, after the six-month period, the detainee provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must furnish evidence sufficient to rebut that showing. *Id.* at 701.

The respondents contend that Qiu's detention is presumptively reasonable under *Zadvydas* because he has been detained for less than six months. (ECF No. 8 at 4.) Qiu argues that the respondents should not be allowed to start the six-month clock at the

moment a noncitizen is detained and that it should commence at the beginning of the removal period. (ECF No. 10 at 5–6.)

There is currently no binding precedent as to when the six-month clock begins for noncitizens who were not detained during the removal period, and district courts across the country have variously found favor in each side's interpretation. *Compare, e.g.*, *Tadros v. Noem*, No. 25-4108-EP, 2025 WL 1678501, at *3 (D.N.J. June 13, 2025) (finding the six-month presumptively reasonable detention period began when the petitioner's removal order became final and not when he was detained sixteen years later), *with Jiang v. Bondi*, No. CIV-25-0922-KG/GBW, 2025 WL 3281819, at *2 (D.N.M. Nov. 25, 2025) (finding that the six-month presumptively reasonable period of detention under *Zadvydas* could not have begun until the petitioner was detained by ICE).

The court is logically persuaded that the six-month clock begins concurrently with the removal period because any amount of time prior to detention would necessarily affect what constitutes a reasonable amount of time for the government to accomplish removal. *See Zavvar v. Scott*, No. CV-25-2104-TDC, 2025 WL 2592543, at *6 (D. Md. Sept. 8, 2025) (distinguishing *Zadvydas* in light of the substantial pre-detention period, nearly seventeen years since the final removal order, during which the government could have arranged for removal). Moreover, the six-month clock counts toward a presumption; it does not prevent the government from detaining an individual after the clock expires if removal is reasonably foreseeable.

5

Qiu's six-month presumptively reasonable detention window therefore expired over twenty-two years ago. Qiu argues that his removal is not reasonably foreseeably at this time because the respondents have not been transparent about the status of travel documents applied for on Qiu's behalf and have failed to articulate a timeline for issuance of those travel documents. (ECF No. 10 at 6.)

The respondents submit a declaration by Carly Schilling, a Supervisory Detention and Deportation Officer for ICE, in which Schilling states that "application documents were completed by the Petitioner for the issuance of a travel document that would facilitate his removal to China" on February 18, 2016.[1] (ECF No. 9, ¶ 7.) Schilling states that "the application for travel documentation remains in process with the Chinese government." (*Id.*, ¶ 8.) She adds that, "[b]ased on recent experience, such requests made with the Chinese government have been honored" such that "ICE anticipates that the Petitioner's requested documents will be received in the foreseeable future." (*Id.*, ¶¶ 10–11.)

The respondents' vague assertion that they anticipate receiving travel documents "in the foreseeable future" does not establish a "significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 689. The government has apparently encountered difficulty removing noncitizens to China. *See Jiang v. Genalo*,

---

[1] The year 2016 is likely a typographical error because the respondents provided a copy of the travel document request submitted to the Chinese Embassy, and it is dated February 23, 2026. (ECF No. 9 at 5.)

6

No. 26-CV-2402-AMD, 2026 WL 1413915, at *5 (E.D.N.Y. May 20, 2026) (observing that the government submitted travel document requests to China in 2010, 2017, and 2026 but had not provided any reason to believe China was now going to provide the necessary documents, and so ordering the petitioner be released). There is no indication as to whether the government has previously applied for travel documents on Qiu's behalf.

Schilling's statement that the Chinese government has recently honored requests for travel documents is made without context or supporting documentation. (*See* ECF No. 9, ¶ 10.) The court cannot determine whether the issuance of travel documents for some unknown number of people with unknown circumstances bears any significance for Qiu's removal.

In a similar case involving post-removal period detention, the government provided evidence that the Vietnamese embassy issued 296 travel documents in the 2025 fiscal year for Vietnamese individuals who arrived in the United States before 1995 to support its contention that the Vietnamese government had changed course from previous non-issuance for this class of people. *See Lu v. Genalo*, 817 F. Supp. 3d 176, 183–84 (S.D.N.Y. 2025). The government also represented in that case that "ICE typically receives travel documents within 30 days of submitting a request." *Id.* The respondents have provided no such details related to Qiu's case.

The respondents vaguely assert that travel documents will be procured in the "foreseeable future" when the application has been pending for over three months

7

without any sign of progress, and they have had over twenty-two years to arrange for removal. They cite to an example of a district court finding detention reasonable more than seven years after the removal period ended, but the petitioner in that case was already detained for seven months, and the court found his continued detention reasonable because the Chinese government already "approved" his application for travel documents, although it had yet to "issue" the documents. (*See* ECF No. 15 at 2 (citing *Piao v. Lyons*, No. 1:25-cv-1725, 2025 WL 3046783, at *3 (E.D. Va October 31, 2025)).) The respondents have provided no indication as to whether the Chinese government has received, approved, or otherwise taken any action on Qiu's application.

On this record, Qiu's removal is not reasonably foreseeable at this time, and his continued detention violates his due process rights. *See Ahmed v. Freden*, 744 F. Supp. 3d 259, 267 (W.D.N.Y. 2024) ("[A]ctive efforts to obtain travel documents from Pakistan are not enough to demonstrate a likelihood of removal in the reasonably foreseeable future where the record before the Court contains no information to suggest a timeline on which such documents will actually be issued."); *see also Hassoun v. Sessions*, No. 18-CV-586, 2019 WL 78984, at *5 (W.D.N.Y. Jan. 2, 2019) ("[U]nder *Zadvydas*, the reasonableness of Petitioner's detention does not turn on the degree of the government's good faith efforts … [but] on whether and to what extent the government's efforts are likely to bear fruit.")

The respondents argue that this outcome will unreasonably handicap the government in its immigration enforcement efforts and place a de facto statute of limitations on the ability of the government to remove noncitizens. (ECF No. 15 at 3.) They contend that the Supreme Court in *Zadvydas* "clearly intended for the likelihood of imminent removal to be the primary consideration as to the reasonableness of post removal-order detention under § 1231(a)(6)." (*Id.*)

But the likelihood of imminent removal is the standard to which the court holds the respondents today. Nothing in this order bars the government from detaining a noncitizen whose removal period is extended because he "fails or refuses to make timely application in good faith for travel or other documents necessary … or conspires or acts to prevent" his removal under 8 U.S.C. § 1231(a)(1)(C).

## 3. Conclusion

**IT IS THEREFORE ORDERED** that Zhou Hong Qiu's petition for a writ of habeas corpus is **granted**. The respondents are directed to release Qiu from custody immediately, and within forty-eight hours of this order, under reasonable conditions of supervision consistent with 8 U.S.C. § 1231(a)(3). The Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 10th day of June, 2026.

WILLIAM E. DUFFIN
U.S. Magistrate Judge